UNITED STATES DISTRICT COURT
EASTERN DIVISION OF MISSOURI
EASTERN DIVISION

WILLIAM BRADFORD, )
)
    Plaintiff, )
) No. 4:05CV00041 FRB
)
v. )
)
JAMES PURKETT, et al., )
)
    Defendants. )

**MEMORANDUM AND ORDER**

Presently before the Court is the motion of James Purkett and James LaBundy ("defendants") for summary judgment pursuant to Fed.R.Civ.P. 56. (Docket No. 27/filed June 7, 2006.) All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

**I. Background**

All matters set forth in the statement of uncontroverted material facts of defendants not specifically controverted by plaintiff are deemed admitted for the purpose of summary judgment. E.D.Mo. L.R. 7-4.01(E). The Court has viewed the facts in a light most favorable to plaintiff, observed the local rule as provided above, and construed plaintiff's pro se filings liberally. The following facts are established for purposes of the summary judgment motion.

At all times relevant to the instant petition, plaintiff was incarcerated in the Missouri Department of Corrections. At present, William Bradford ("plaintiff") is a civilly committed resident of the Missouri Sexual Offender Treatment Center ("MSOTC"), where he is being detained pursuant to the Missouri Sexually Violent Predators Act ("SVPA"), R.S.Mo. § 632.480 et seq. In the instant cause, plaintiff contends that he was denied psychiatric treatment while incarcerated with the Missouri Department of Corrections, and that his mental health condition therefore persisted and resulted in his current civil commitment.

Defendant James Purkett is currently the Superintendent of the Eastern Missouri Reception and Diagnostic Correctional Center, and was previously employed by the Missouri Department of Corrections as Superintendent of the Farmington Correctional Center ("FCC"), where plaintiff was incarcerated. As Superintendent of FCC, Purkett oversaw the general operation of the institution. James LaBundy is currently employed by the Missouri Department of Health at the Southeast Missouri Mental Health Center in Farmington, Missouri, and was previously employed by the Missouri Department of Corrections as Chief of Sex Offender Services at FCC. As Chief of Sex Offender Services, LaBundy oversaw the Missouri Sexual Offender Program ("MOSOP"), the Sex Offender Assessment Units, and the monitoring of sex offenders on probation or parole who were receiving MOSOP approved therapy from private providers. In addition, from August 1998 to January 1, 2000, LaBundy was

Clinical Supervisor of the MOSOP program, and as such supervised all of the MOSOP therapists and treatment groups.  MOSOP is a treatment, education and rehabilitation program which is conducted in phases.  Relevant to the instant case is Phase I, an orientation phase, and Phase II, a treatment phase which includes small group therapy sessions conducted by therapists.[1]

In 1995, plaintiff was sentenced to a period of confinement within the Missouri Department of Corrections. Plaintiff entered the first phase of MOSOP, and completed it on June 24, 1998.  (Docket 28-5 at page 2.)  Plaintiff was immediately placed into Phase II of MOSOP, but was terminated on March 5, 1999 after receiving a conduct violation for failing a urine test.  (Id. at page 3.)  Plaintiff was subsequently entered into Phase II for a second time, but was terminated on January 14, 2000 for "failing to comply with his therapists goals to meet his treatment plan." (Id. at page 4.)  It is further noted that plaintiff refused "to work his treatment program as assigned."  (Docket 28-5 at page 4.)

Plaintiff filed the instant cause of action under 42 U.S.C. § 1983, alleging that defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution by failing to provide him with mental health care. Specifically, in his petition, plaintiff alleges that he received

---

[1] See R.S.Mo. § 589.040(1); see also Russell v. Eaves, 722 F. Supp. 558, 559 (E.D. Mo. 1989)(recognizing that MOSOP is a treatment program.)

"<u>no</u> treatment of <u>any kind</u>" for his condition, and further asserts that "MOSOP is <u>not</u> adequate treatment for the mental abnormality that renders persons dangerous beyond their control." (First Amended Complaint, Docket No. 20, at page 4)(emphasis in original). Section 1983's five-year statute of limitations limits the scope of plaintiff's amended complaint to acts which occurred between January 10, 2000 and July 29, 2003.² Plaintiff further asserts a state law claim based upon an alleged violation of Mo. Rev. Stat. §552.050,³ and petitions this Court to exercise supplemental jurisdiction. (<u>Id.</u> at page 1.) Defendants move the Court for summary judgment, claiming that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law and that they are entitled to qualified immunity.

**II. Summary Judgment Standard**

Pursuant to Fed. R. Civ. P. 56(c), a court may grant summary judgment if the information before the court shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. <u>Anderson v.</u>

---

²The applicability of the statute of limitations and the relevant time period is not in dispute.

³Mo. Rev. Stat. §552.050 states in relevant part: "If the chief administrative officer of any correctional facility has reasonable cause to believe that any offender needs care in a mental hospital, he shall so certify to the division of classification and treatment, which shall then transfer the offender to a state mental hospital for custody, care and treatment."

Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden of proof is on the moving party to set forth the basis of its motion, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and the court must view all facts and inferences in the light most favorable to the non-moving party. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial. Id. The non-moving party may not rest upon its pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion. Celotex, 477 U.S. at 324.

**III. Qualified Immunity**

Defendants claim they are immune from suit under the doctrine of qualified immunity. Qualified immunity protects state actors "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity strikes a balance between the "vindication of constitutional guarantees," as afforded by section 1983, and effective public service, by reducing "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit [public] officials in the discharge of their duties." Anderson v. Creighton, 483 U.S. 635, 638 (1987).

In evaluating a claim of immunity from suit under the doctrine of qualified immunity, the threshold question is whether defendants' conduct violated plaintiff's constitutional rights. Saucier v. Katz, 533 U.S. 194, 201 (2001). In Saucier, the Supreme Court held that the district court must first determine whether the facts as alleged show a violation of a constitutional right, and if so, whether that constitutional right was clearly established at the time of the alleged violation such that a reasonable officer would understand that his conduct violated such right. Id. at 201; see also Craighead v. Lee, 399 F.3d 954, 961 (8th Cir. 2005). If the facts alleged would not amount to a constitutional violation, there is no need for the court to inquire further. Saucier, 533 U.S. at 194; McVay ex rel. Estate of McVay v. Sisters of Mercy Health Sys., 399 F.3d 904, 908 (8th Cir. 2005).

**IV. Plaintiff's Constitutional Claims**

In the instant case, this Court need not inquire beyond the first step of the Saucier analysis. Viewing the facts alleged in the light most favorable to plaintiff, this Court determines that plaintiff's constitutional rights were not violated.

As noted, supra, plaintiff claims that defendants violated his Eighth and Fourteenth Amendment rights by failing to provide mental health treatment. As an initial matter, the Court notes that a convicted prisoner's claim of failure to provide medical treatment is properly analyzed under the Eighth Amendment,

not the Fourteenth Amendment, inasmuch as the Eighth Amendment's prohibition against cruel and unusual punishment applies to convicted persons. Bell v. Wolfish, 441 U.S. 520 (1979); Hartsfield v. Colburn, 371 F.3d 454, 456-457 (8th Cir. 2004). For this reason, the Court finds that plaintiff's Fourteenth Amendment claim is not viable, and should be dismissed with prejudice as a matter of law.

Plaintiff does, however, state a cause of action under section 1983 by alleging that his Eighth Amendment rights were violated. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." County of Sacramento v. Lewis, 523 U.S. 833 (1998). The Eighth Amendment's proscription of "cruel and unusual punishment" requires prison officials to provide "humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 835 (1994); see also Weaver v. Clarke, 45 F.3d 1253, 1255 (8th Cir. 1995). This includes providing medical treatment, and a plaintiff makes a successful claim of Eighth Amendment violation for failure to provide treatment if the facts alleged show that the defendants' actions demonstrated "deliberate indifference" to plaintiff's "serious medical needs." Estelle v. Gamble, 429 U.S. 9, 104 (1976) (citing Gregg v. Georgia, 428 U.S. 153, 173 (1976).[4]

---

[4]The parties do not dispute that the "deliberate indifference" standard governs the claim in the present case.

A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the need for treatment. Aswegan v. Henry, 49 F.3d 461, 464 (8th Cir. 1995); Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Deliberate indifference to a serious medical need is established when plaintiff shows that defendants "knew of, yet disregarded," an excessive risk to plaintiff's health. Farmer, 511 U.S. at 837. This requires a finding that defendants possessed a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)). A plaintiff cannot successfully demonstrate deliberate indifference by alleging facts which show merely that plaintiff disagreed with the treatment offered to him, or that prison officials failed to implement his chosen form of treatment. Long v. Nix, 86 F.3d. 761, 765 (8th Cir. 1996).

As noted, supra, plaintiff alleges that defendants violated his Eighth Amendment rights by failing to provide him with treatment of any kind and/or failing to provide him with treatment other than MOSOP, which plaintiff alleges is inadequate. Plaintiff's argument fails. Assuming, arguendo that plaintiff indeed suffers from a serious medical need, the record does not support a finding that defendants were deliberately indifferent to plaintiff's need for treatment.

As plaintiff acknowledges in his petition, he was entered into MOSOP at the time of his incarceration. MOSOP is, by

definition, a treatment program for sex offenders. R.S.Mo. § 589.040(1); see also Russell, 722 F. Supp. at 559 (recognizing that MOSOP is a treatment program). As noted, supra, the record shows that plaintiff completed Phase I, and was twice terminated from Phase II: once for failing a drug screen, and a second time for failure to comply with his therapist's goals to meet his treatment plan. These facts, construed in the light most favorable to plaintiff, cannot support a claim of deliberate indifference. Beck v. Skon, 253 F.3d 330 (8th Cir. 2001) (prison officials were not deliberately indifferent when record demonstrated they attempted to meet inmate's medical needs and were rebuffed by inmate); Logan v. Clarke, 119 F.3d 647 (8th Cir. 1997) (prison officials were not deliberately indifferent when record demonstrated they offered inmate pain medication and other treatment, and inmate refused and failed to follow treatment directions); Long, 86 F.3d 761 (finding of deliberate indifference not supported by a record demonstrating that prison medical staff tried to evaluate inmate's psychological problems and inmate refused to cooperate).

As defendants note, plaintiff's complaint appears to involve merely a dispute over the type of treatment defendants offered to him. Such a claim cannot establish an Eighth Amendment violation. Inmates have no constitutional right to any particular type of treatment, and prison officials do not violate the Eighth Amendment by refusing to implement a prisoner's chosen type of treatment. Long, 86 F.3d. at 765.

Because plaintiff cannot demonstrate that defendants were deliberately indifferent to a serious medical need, he cannot establish that defendants committed acts or omissions which violated his Eighth Amendment rights. Because the facts alleged do not amount to a constitutional violation, this Court need not inquire further. See Saucier, 533 U.S. at 194; Harlow, 457 U.S. at 818; McVay, 399 F.3d at 908.

## V.  Supplemental Jurisdiction

This Court finally considers the issue of whether to exercise supplemental jurisdiction over plaintiff's state law claim. In any civil action in which this Court has original jurisdiction, it also has supplemental jurisdiction over all other claims which are so related to the claims giving original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367. Once the claims comprising the matter over which this Court has original jurisdiction are concluded, however, it is left to the court's discretion whether to exercise supplemental jurisdiction over any remaining state law claims. 28 U.S.C. § 1367(c)(3). If the original jurisdiction claims are dismissed before any "substantial preparation" has been expended on the dependent claims, the favored approach is to dismiss or remand the state claims upon declining supplemental jurisdiction. 28 U.S.C.A. § 1367; Gregoire v. Class, 236 F.3d 413, 419-20 (8th Cir. 2000). Favoring this approach stems from the desire to "exercise judicial

restraint and avoid state law issues wherever possible." <u>Condor Corp. v. City of St. Paul</u>, 912 F.2d 215, 220 (8th Cir. 1990) (citing <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726-27 (1966) (principles of federalism require great deference and comity to state court forums to decide issues involving state law questions). This Court therefore declines to exercise supplemental jurisdiction over plaintiff's state law claims.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that plaintiff's claim of violation of his Fourteenth Amendment rights under the United States Constitution is dismissed with prejudice as provided herein.

**IT IS FURTHER ORDERED** that defendants James Purkett and James LaBundy's Motion for Summary Judgment (Docket No. 27) is granted as provided herein.

**IT IS FURTHER ORDERED** that, because this Court declines to exercise supplemental jurisdiction over plaintiff's pendent state law claim, that claim is dismissed without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Voluntary Dismissal without prejudice (Docket No. 29/filed June 19, 2006) is denied.

/s/ Frederick R. Buckles
_____
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of March, 2007.